CASE No. 1125.

PRESSLEY v. KEMP.

1. The question at issue is an equity case, being the validity of a deed, alleged not to be genuine, or, if executed, to have been obtained by fraud and undue influence, certain issues of fact were submitted to a jury, whose findings, adverse to the executor of the grantor, were approved and adopted by the Circuit judge. These findings not being opposed to the weight of the testimony, *held,* that this court must affirm them.

2. A maiden lady, aged, deaf and feeble, a short time before her death executed a deed conveying a considerable portion of her property to a young man in whose family she had resided for two years, and between whom and herself a strong attachment had arisen. The deed was prepared by an attorney under her directions, given in the presence of the donee, and was executed by her after reading it over, and with knowledge of what she was doing. *Held,* That no coercion of the donor's will appearing, there was nothing in the relationship between the parties to raise the presumption of undue influence, or to avoid the deed for constructive fraud.

Before WALLACE, J., Greenville, July 1880.

This was an action by Samuel H. Pressley, as executor of the will of Sarah Eliza Evans, against E. T. Kemp and Giles L. Glazener, commenced August 19th, 1879.

The testimony was taken, mostly, in open court, was to some extent conflicting, and was very voluminous, covering thirty-six pages of the brief; but the points at issue are clearly indicated by the questions submitted to the jury. The answers are the finding of the jury, and they make the case upon which the decision is based. These questions and findings were as follows:

1. What was the age of Miss Sarah Eliza Evans at the time of the execution of the paper referred to in the pleadings, and under which the defendant Kemp claims? Seventy.

2. What was her domicile at the date of the execution of said deed? Greenville.

3. At the date of the execution of the deed was she infirm in body? Was she not feeble? Yes.

4. Was she sick at the date of the execution of said deed? Only feeble.

5. If she was infirm, feeble and sick, how long had she been so before the execution of said deed? Twelve days.

6. Was she not helpless at the date of the execution of said deed? No.

7. Was she under the control of defendant Kemp and his family at the said date? No; but she was living with Kemp.

8. At the said date was her capacity so alive as to prevent her from executing an instrument of the contents of which she was not aware? She knew what she was doing.

9. At said date was she so languid and reduced as to acquiesce in whatever might be proposed by those around her having influence with her? No.

10. At said date was her mind in such a condition as to enable her to give free and deliberate assent to the terms of said deed? Yes.

11. Was said deed read over to her? If so, by whom and when? No.

12. Could she on the day of its execution hear it read? No.

13. In her condition could she have understood it by the motion of human lips? No.

14. Was she capable of reading it on the day of its date? Yes.

15. Was Kemp present and aiding in its execution? Yes.

16. At what hour of the day was it executed, and on what day of the week and month? Wednesday.

17. Did she ever read the deed? If so, when? Yes.

18. Did she ever have it in her hands, prior to the execution or after? Yes.

19. At the time of its execution was its legal effect made known to her, or did she know its legal effect? She knew its legal effect.

20. Did she know at the time of its execution that it would disappoint the charities provided for under her will? Yes; she had changed her mind.

21. Were any misrepresentations made by defendant Kemp to Miss Evans, moving her to the execution of said deed? No.

22. Were any misrepresentations made by any one in his interest moving Miss Evans to the execution of said deed? No.

23. Were any arts or stratagems used by defendant Kemp to obtain the execution of said deed? No.

24. Was any advantage taken of her age, helplessness or situation, by the defendant Kemp or any one in his interest, moving the execution of said deed? No.

25. At date of execution of deed did not Miss Evans have first cousins residing at Society Hill, in Darlington county, and elsewhere? Yes.

26. Did not these relatives manifest interest in Miss Evans before her death and up to the time of her death? But little.

27. Did not Miss Evans repose great confidence in Kemp, and did he not act toward her in that confidence? Yes.

28. Was there a relation of friendly habits between Miss Evans and defendant Kemp? Yes.

29. Did Miss Evans use defendant Kemp as an agent in the transaction of any of her business? As her agent in one or two instances.

30. Did defendant Kemp act for Miss Evans in any way in the preparation and execution of said deed? Yes; but in good faith.

31. At the date of the execution of said deed, how many of the friends of her youth resided in Greenville? Two.

32. To how many friends of her youth did Kemp communicate her intention to make this deed to him? Not one.

33. Did Kemp fail in his duty to Miss Evans during the last three weeks of her life in any particular. No.

After the case was opened and the contested deed was, on the call of the plaintiff's counsel, delivered to them by defendant's counsel, and for the first time inspected by them, plaintiff called in question the *factum* of the deed; and thereupon the judge ordered additional questions to be presented to the jury.

The additional questions with their answers are as follows:

34. Did Miss Evans sign the deed offered in evidence? Yes.

35. Did Miss Evans give instructions to her attorney for the preparation of the deed? Yes.

36. Was the deed in accordance with those instructions? Yes.

The Circuit decree was as follows:

It appears that Miss Evans, the grantor, was an aged maiden lady, and entirely deaf, that she was in feeble health, and had gone from Darlington county, where she had been brought up, to Greenville, because she found the climate of the latter place better for her health. The defendant and his mother lived together, and Miss Evans, by the advice of a friend, became their lodger. She lived with them for about a year, and then the Kemps moved into and occupied a house belonging to Miss Evans in the city of Greenville. The Kemps did not, for about a year—the time they occupied Miss Evans' house, in her lifetime—pay her rent, nor did Miss Evans pay them for board and lodging.

A few days before her death, Miss Evans executed the deed in controversy. While Miss Evans lived with the Kemps, a mutual affection had grown up between them. It is sought, by this proceeding, to set aside the deed, upon the ground that it was obtained by the influence of defendant, which he was able to exert on account of the relation of confidence between himself and Miss Evans. I do not fully set out the facts in the case and discuss them, because I am satisfied with the findings of the jury upon the issues submitted to them, and approve and

W

adopt their verdict. Do these findings bring the case within the principle which would operate to destroy the deed?

In *Chesterfield* v. *Janssen*, 2 *Ves. Sr.* 125, Lord Hardwicke divided fraud into four heads: 1. Fraud arising from facts and circumstances of imposition. 2. Fraud arising from the intrinsic value and subject-matter itself. 3. Fraud presumed from the circumstances and condition of the parties contracting. 4. Fraud affecting third persons not parties to the agreement. It is sought to bring this case within the third division. This principle relates to transactions between trustees and *cestuis que trust*, attorney and client, parent and child, or other relation, connection or position, in which an undue advantage, influence or control may be obtained or exercised over the judgment of another. It does not declare absolutely void any and every transaction between parties standing in such relation to each other; but when one person stands in a relation of special confidence to another, he cannot accept a benefit from the other without exposing himself to the risk in a degree proportioned to the nature of their connection, of having it set aside as unduly obtained. A court of equity, perhaps, applies more exacting rules of proof of good faith of a transaction between parties who sustain a fiduciary relation, strictly so called, to each other, than to others outside of that class. For, between the former, it must appear that the transaction is to the advantage of the presumed weaker party, to be sustained.

There is another class of relations, not strictly fiduciary, from which the law presumes authority and control—that of attorney and client, and parent and child, for example. A transaction between persons in this class is sustained upon proof rebutting the presumption that it was obtained by influence. Descending from these conspicuous classes, there are great varieties of relations in which dominion may be exercised by one person over another, but in proportion as such relationship is less marked and distinct, the presumption of fraud is less strong. Where the actual relation from which the law presumes dominion is dissolved, notwithstanding kindly feelings which the connection may have caused may remain, no presumption of fraud arises from that fact. Confidence in, or affection for, the grantee

affords no ground for assailing a voluntary deed, unless it further appears that the confidence was betrayed or the affection made use of to impose constraint upon the wishes or inclination of the grantor.

It has always been held that love and affection were a sufficient consideration to support a deed, and the statement of that consideration in a deed is not sufficient to throw upon the grantee the burden of showing that there was no fraud in the transaction. It appears, in the case in hand, that Miss Evans and defendant lived in the same house. He did not charge her for board, and she did not require him to pay rent. While she was old and deaf and in feeble health, there was no proof of mental unsoundness. Miss Evans was kindly treated by Mrs. Kemp, and affectionately treated by defendant. She had stated to some of her friends her regard for and interest in defendant. I do not see, in the relations of the parties as developed at the trial, any ground for the presumption of fraud. There was no proof that defendant ever undertook to persuade Miss Evans to do anything, or suggested to her any disposition of any part of her estate. Her kindly offices towards him, and his affectionate acts towards her, do not furnish grounds for avoiding the deed.

*It is therefore decreed, adjudged and ordered,* That the complaint be dismissed.

Plaintiff appealed.

*Messrs. A. C. Spain* and *Boyd & Nettles,* for appellants.

The Circuit judge erred in not holding the deed void on the ground of constructive fraud. 1 *Story Eq. Jur.* §§ 258, 309; 4 *Myl. & C.* 269; 5 *Rich. Eq.* 458; 9 *Hare* 534; 73 *N. Y.* 498; 54 *Ala.* 510; 14 *Ves. Jr.* 287; 2 *Mad. Ch. R.* 105; 4 *Moak Eng. R.* 692; 7 *Beav.* 551. In such cases the burden is on the donor to show that the gift was free from the bias of the confidential relation; we might go further and say, to show that the relation had been severed. 23 *Moak Eng. R.* 249; 27 *Am. Rep.* 727; 29 *Id.* 198; 1 *Story Eq. Jur.* § 309; 86 *Pa. St.* 512. The deed will be set aside, unless it is shown that its

provisions were clearly understood, deliberately determined upon, and were fair and reasonable, under the circumstances. 1 *Story Eq. Jur.* § 310; 2 *Moak Eng. R.* 263, 301; 3 *Cow.* 572; 11 *Wheat.* 125. The deed will be set aside, unless it is shown that the grantor was under protection and had independent advice. 1 *Story Eq. Jur.* § 318; 1 *Ch. App. Cas.* 256; 7 *Beav.* 551; 2 *Ves. Sr.* 627. See, also, 5 *Rich. Eq.* 458; 3 *Desaus.* 292; 4 *Id.* 715; *Bisp. Eq.* §§ 230–236. That the verdict and decree are against us, see *Bailey Eq.* 38; 12 *S. C.* 508, 609.

[The argument on the facts is omitted.]

*Messrs. W. H. Perry* and *W. E. Earle,* contra.

January 10th, 1882. The opinion of the court was delivered · by

McGOWAN, A. J. This was an action in the nature of a suit in equity, brought by the plaintiff, as executor of the last will and testament of Sarah Eliza Evans, deceased, late of Society Hill, Darlington county, to set aside and have canceled a deed alleged to have been made by the testatrix, in her life-time, to the defendant, Edgar T. Kemp, of Greenville county, on the ground that said deed is void and of no effect by reason of fraud and undue influence.

Miss Evans had made her will March 11th, 1874, with codicil January 10th, 1876, by which she disposed of her whole estate. After certain devises and bequests, she gave the rest and residue to be sold to the best advantage, and the proceeds paid over to the Rev. James Furman, of Greenville, South Carolina, to be used by him in aid of Foreign and Domestic Missions, &c. She owned a house and lot in Greenville, which she leased to Edgar T. Kemp. She boarded with him, and died there on December 9th, 1878. After her death, said Kemp produced a deed, which purported to have been executed by the testatrix on December 4th, five days before her death, by which was conveyed to him "the house and lot in Greenville, two notes made by Giles L. Glazener, and secured by a mortgage, and one undivided half of a tract of land at Florence, S. C., containing one hundred and thirty acres."

The appellant, as her sole qualified executor, commenced the action in Darlington county, but to promote the convenience of witnesses, the *venue* was changed from Darlington to Greenville county. The case came on to be heard before Judge Wallace, and an issue was sent to a jury, consisting of *thirty-six questions as to facts*, about which it was supposed there would be conflicting testimony. It would unnecessarily encumber this judgment to set out these questions and answers at length. The answers were almost without exception favorable to the respondent, and, taken together, in reference to subject-matter, make a connected finding substantially as follows: "Miss Evans was seventy years of age when she executed the deed to Kemp. At that time her domicile was Greenville. The deed was executed on Wednesday. She instructed her lawyer, Governor Perry, to prepare the paper, which was prepared in accordance with her instructions. She was not sick at the time; not helpless, but feeble, and had been so for twelve days before the execution of the paper. She was living with Kemp, but not under his control. There was a relation of confidence between Miss Evans and Kemp. She reposed great confidence in him, and he acted towards her in that confidence. He acted as her agent in one or two instances. He was present aiding in the execution of the deed. He acted for her in the preparation and execution of the deed, but in good faith. She was not in condition to acquiesce in whatever might be proposed by those having influence with her. She knew what she was doing. The deed was not read over to her. She could not have heard it read nor understood it by the motion of human lips, but she read the paper herself, and knew its legal effect. She had changed her mind as to 'the charities' without any misrepresentations or arts or statagems by Kemp, or any one in his interest. No advantage was taken of her age, helplessness or situation. Miss Evans had first cousins residing in Society Hill and elsewhere, who manifested little interest in her before and up to the time of her death. At the date of the paper, only two of the friends of her youth resided in Greenville, and Kemp did not communicate her intention to make this deed to either of them. Kemp did not fail in his

duty to Miss Evans during the last three weeks of her life in any particular," &c.

The testimony and these findings were considered by the judge, who sustained the deed and dismissed the complaint. The plaintiff appeals to this court. There seem to be no regular exceptions, but in the elaborate and learned argument of the appellant's counsel, the following grounds for reversing the judgment are insisted on:

1. "Because the Circuit judge erred in sustaining the findings of the jury as contained in answers to questions 4, 5, 6, 7, 8, 9, 10, 14, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 33, 34, 35, 36 of issues of fact, and in answers to 29 and 30 in so far as it was found that defendant's agency was confined to one or two instances, and the defendant acted in good faith in the preparation and execution of the deed in controversy.

2. "Because the Circuit judge was in error in supposing that the plaintiff below relied alone on constructive fraud, and in confining his decision to that point; whereas the plaintiff relied strongly on the evidence of positive fraud, and now insists that the Circuit judge erred in not setting aside the deed on that ground.

3. "Because the Circuit judge erred in holding that the relations which existed between S. E. Evans and E. T. Kemp, with the circumstances in the case, at the time of its alleged execution, were not sufficient to invalidate the deed in question."

*The first and second propositions* complain of error of fact in the findings of the jury and in the judgment of the Circuit judge in relation to the charge of positive fraud. Notwithstanding Miss Evans had previously executed her will, giving the proceeds of the rest and residue of her estate to the purposes of religious charity, she had, as long as she lived, the undoubted right to change her mind and make a different disposition of those proceeds either by deed or will, only provided it was her own voluntary act, not induced by imposition, fraud or undue influence. The only question is: was the deed her own voluntary act? Upon this subject there was much proof. Foreseeing that there would be conflict of testimony, especially in reference to the capacity of Miss Evans at the time the deed purports to

have been signed, and as to her signature and the due execution of the paper, issues carefully framed so as to test the question in every possible phase and form were submitted to a jury, who, as before stated, found for the defendant in most of the questions submitted, and the Circuit judge concurred in these findings, saying that " he was satisfied with the findings of the jury upon the issues submitted, and approved and adopted their verdict."

Under these circumstances this court will generally accept as established the facts thus found. Inquiry must end somewhere. A jury of the vicinage, acquainted with the witnesses who testify in their presence, is peculiarly fitted to weigh conflicting testimony and decide contested questions of fact. When the finding of such a body of twelve men is approved and adopted by the Circuit judge, who, intelligent, disinterested and accustomed to consider the force of testimony, is also present and sees and hears the witnesses examined before him, it would seem that the verdict ought to be as near absolute truth as is attainable under imperfect human institutions. In this respect the case is analogous to that of *Gadsden* v. *Whaley*, 14 *S. C.* 217, in which it is said : " Being an action for equitable relief this court may reconsider all the evidence, but the safe principle upon which it generally acts is not to overrule the conclusions of the Circuit judge upon doubtful questions of fact, though the court might not have reached the same conclusion he did. The rule is more strictly adhered to when there is concurrence between a Circuit judge and a referee. As to its probable correctness the verdict of a jury is as strong as the report of a referee. In the last case upon the subject, *Adger & Co.* v. *Pringle*, 11 *S. C.* 548, it is said : ' The question of fact having been decided by the referee, and his decision having been confirmed by the Circuit judge, their decision must be regarded by us as conclusive unless it is without any testimony to sustain it, or is manifestly against the weight of the evidence.' " We have looked carefully through the testimony in this case and are unable to say that the judgment is against the weight of the evidence upon the charge of actual fraud.

*The third proposition* is that the Circuit judge erred in not holding the deed void on the ground of constructive fraud growing out of the confidential relation of the parties.

Undue influence is a term not very clearly defined. It is easier to say what it is not, than what it is. Perhaps it is safer not to hazard a precise definition, as the circumstances in the affairs of life in which the principle may be invoked are infinitely various and diversified. The well established rule upon the subject, certainly as applicable to the execution of wills, is "that it must amount to force and coercion—destroying free agency. It must not be the influence of affection and attachment; it must not be the mere desire of gratifying the wishes of another, for that would be a very strong ground in support of a testamentary act. Further, there must be proof that the act was obtained by this coercion—by importunity which could not be resisted—that it was done merely for the sake of peace, so that the motive was tantamount to force and fear." 2 *Wms. Ex.*, ch. I., § 2; *Parfitt* v. *Lawless*, 4 *Moak Eng. R.* 694; *Means* v. *Means*, 5 *Strobh.* 192. In our own case, last cited, it is said that "it is not influence merely, but *undue* influence that is always alleged— something excessive and unlawful. It is not the influence of friendship or affection that can be complained of, nor the influence of argument or entreaty, nor the impression made by kindness or prudence, nor even the effect wrought by servile compliance or mean endurance of wrong. It must be something that destroys free agency. Motives of almost every conceivable kind may be offered, and if the mind of the agent—free to adopt or reject the motives—yields its assent, the act is the act of the agent." This is beyond all doubt our law upon an issue of *devisavit vel non*, and, according to the principles announced in these authorities, the facts, as found by the jury in this case, would fall far short of setting aside the paper in controversy for undue influence, if it were a will. We look in vain for evidence to show anything like *coercion of the will* of the donor.

Lord Cranworth, in *Boyse* v. *Rossborough*, 6 *H. L. C.* 49, said: "One point, however, is beyond dispute, and that is, that where once it has been proved that a will has been executed with due solemnities by a person of competent understanding, and apparently a free agent, the burden of proving that it was executed under undue influence is on the party who alleges it." If, therefore, Miss Evans had taken the advice of her attorney

and expressed her intention in favor of the defendant by a codicil to her will instead of a deed, there could be no doubt of the legality and validity of the donation.

Does it alter the case that the form in which she expressed her change of intention was by deed and not by will? It has been urged with zeal and learning that, as this was a deed *inter vivos*, and the relations between the parties were of a confidential character, the doctrine applicable to wills does not apply; but that this is one of those cases in which the Court of Equity will declare the deed void, or at least presume undue influence and set it aside, unless the donee proves affirmatively that it was *not procured by undue influence*. This doctrine certainly tends to reverse the rule of evidence that no one shall be required to prove a negative; but it seems that the English Chancery, in a particular class of cases, does make a distinction in this respect between a will and a deed.

The leading case on the subject is that of *Huguenin* v. *Baseley*, 14 *Ves.* 300, but the doctrine is stated more fully by Lord Penzance in the case of *Parfitt* v. *Lawless*, 4 *Moak Eng. R.* 692, as follows: "In equity, persons standing in certain relations to one another, such as parent and child, man and wife, doctor and patient, attorney and client, confessor and penitent, and guardian and ward, are subject to certain presumptions when transactions between them are brought in question. And if a gift or contract, made in favor of him who holds the position of influence, is impeached by him who is subject to that influence, the courts of equity cast upon the former the burden of proving that the transaction was fairly conducted as if between strangers; that the weaker was not unduly impressed by the natural influence of the stronger, &c. * * * In the first place, in gifts or contracts *inter vivos*, there is a transaction in which the person benefited at least takes part, whether he unduly urges his influence or not; and in calling upon him to explain the part he took and the circumstances that brought about the gift, the court is plainly requiring of him an explanation within his knowledge. But in the case of a legacy, under a will, the legatee may have, and, in point of fact, generally has, no part in or even knowledge of the act. A more material distinction is this: The influence

which is undue in the cases of gifts *inter vivos* is very different from that which is required to set aside a will. In the case of gifts *inter vivos* it is considered by the courts of equity that the natural influence which such ·relations as those in question involve, exerted by those who possess it, to obtain a benefit for themselves, is an undue influence. Gifts brought about by it are, therefore, set aside, unless the party benefited by it can show affirmatively that the other party to the transaction was placed ' in such a position as would enable him to form an absolutely free and unfettered judgment.' *Archer* v. *Hudson,* 7 *Beav.* 551.". We think the rule, as here announced, is only applicable where there are well-defined confidential relations, such as those indicated in the cases cited.

So far as this doctrine as to deeds is supposed to spring from relations of confidence between the donor and donee, assuredly those same relations may also exist between testator and devisee. In the case before us, for example, there was involved no general disposition of the whole estate, as is usual in wills, but the gift was to one person, single and simple, and the donor died only a few days after the execution of the paper. Under these circumstances, is there any principle which· requires that the rule of evidence should be different from what it would have been if Miss Evans had acted on the suggestion to accomplish her purpose by means of a codicil to her will instead of a deed? It is difficult to say certainly what relations are and what are not within the rule, but we take it that it does not include those merely of friendship and confidence. In the case of *Hunter* v. *Atkins,* 3 *Myl. & K.* 113, a gift was made by a person upwards of ninety years of age, who had a wife and adopted daughter, to a confidential agent, who had for many years been in the habit of friendship with the donor—without the intervention of a disinterested third person—the solicitor who drew the deed being the solicitor of the person who took the benefit under it. The gift was declared void at the rolls, but, under all the circumstances, sustained upon appeal. Lord Brougham stated the rule in the following terms :

" The rule, I think, is, that where the known and defined relations of attorney and client, guardian and ward, trustee and

*cestui que trust* exists, the conduct of the party benefited must be such as to sever the connection and to place him in the same circumstances in which a mere stranger would have stood, giving no advantage, save only whatever kindness or favor may have arisen out of the connection; and that where the only relation between the parties is that of *friendly habits, or habitual reliance, on advice and assistance, accompanied with partial employment in doing some sort of business, care must be taken that no undue advantage shall be made of the influence thus acquired.* The limits of natural and often unavoidable kindness, with its effects, and of undue influence exercised, or unfair advantage taken, cannot be more rigorously defined." ·

The case of *Huguenin* v. *Baseley, supra,* is cited approvingly by the Chancellor who delivered the judgment of the court in our own case of *Paris* v. *Cobb,* 5 *Rich. Eq.* 457, but in the latter case the relation between the parties was that of grandfather and grandchild and agent. It is stated in a note to the case of *Morgan* v. *Minett,* 23 *Moak Eng. R.* 252, that "the principal case holds the rule relative to gifts to persons standing in confidential relations to the donor more strictly than it is held by the courts of this country. A gift to such person, when shown by direct or circumstantial evidence to have been understandingly made,. by a person competent to make it, without fraud or imposition by the donee, is held valid." 1 *Story Eq.* §§ 311, 314.

We do not see that the donor and donee in this case held to each other such relations of confidence as are referred to in the cases. The parties were in no way related—they were not trustee and *cestui que trust.* · Kemp and his mother lived together. Miss Evans lodged with them, and continued to do so for about two years, when she died in their house. While Miss Evans lived with them a mutual friendship had grown up between them. A few days before her death Miss Evans executed the deed in controversy. The jury found that she knew what she was doing. She read the paper herself, and knew its legal effect. She had changed her mind as to the charities without any misrepresentations, or arts, or stratagems of Kemp or any one in his interest. No advantage was taken of her age, helplessness or

situation. Kemp did not fail in his duty to Miss Evans during the last three weeks of her life in any particular.

In this state of facts we know of no rule of law or principle of equity which would authorize a court to declare the deed of Miss Evans invalid and thus defeat her intention in reference to her own property. In the language of Lord Brougham, in the case of *Hunter* v. *Atkins, supra:* "If, on such grounds, a deed so prepared and so executed is to be set aside, few, assuredly, of the acts of men, dealing with their own affairs, are safe ; and the law which enables all who are of sound mind to dispose of their property, no longer exists but in name."

The judgment of this court is that the judgment of the Circuit Court be affirmed.

SIMPSON, C. J., and McIVER, A. J., concurred.